1  **MAY FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
2  SAN FRANCISCO, CA 94111-3409
TELEPHONE:    415.434.4484
3  FACSIMILE:    415.434.4507

LAURENCE R. ARNOLD, CA BAR NO. 133715
4  LARNOLD@FOLEY.COM
EILEEN R. RIDLEY, CA BAR NO. 151735
ERIDLEY@FOLEY.COM
5  SCOTT P. INCIARDI, CA BAR NO. 228814
SINCIARDI@FOLEY.COM

6  Attorneys for STANFORD HOSPITAL & CLINICS and
LUCILE PACKARD CHILDREN'S HOSPITAL

7

8  ### UNITED STATES DISTRICT COURT

9  ### NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No:  5:08-CV-00216-JF |
| 12 | STANFORD HOSPITAL AND CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES |
| 13            Petitioner, | |
| 14        vs. | |
| 15  STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 16 | [FED. RULE OF CIV. P. 56] |
| 17            Respondents. | Date:      August 29, 2008 |
| 18 | Time:      9:00 A.M. Dept:      Ctrm. 3, 5th Floor |
| 19 | Judge:      Hon. Jeremy Fogel |
| 20 | |
| 21  SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 |  Case No:  5:08-CV-01726-JF |
| 22            Petitioner, | |
| 23        vs. | |
| 24  STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 25 | Judge:      Hon. Jeremy Fogel |
| 26            Respondents. | |

27

28

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No:  5:08-CV-01727-JF |
| Petitioner, | |
| vs. | |
| STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| Respondents. | Judge:        Hon. Jeremy Fogel |

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

SFCA_1424228.4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................ 1

II.   STATEMENT OF FACTS ............................................................... 2

    A.    The Certification And Collective Bargaining Agreement ........................ 3

    B.    The Grievances .................................................................... 3

    C.    Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW ............................ 4

        (1)    Local 715 Enters Into A "Servicing Agreement" With UHW .......... 4

        (2)    In March, 2006, UHW Assumes Local 715's Functions ................. 5

        (3)    Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct ............................................ 5

        (4)    The Hospitals Refuse To Deal With UHW Employees .................... 6

        (5)    SEIU Implements A Plan To Reorganize SEIU Locals .................. 7

        (6)    The Hospitals Determine That The Servicing Agreement Is Not Legitimate. ................................................................ 7

        (7)    In Early 2007, Local 715 Prepares To Disband Itself And Its Representatives Confirm That It Has Ceased To Exist ................... 8

        (8)    The Hospitals Cease Remitting Dues To Local 715 In Light Of The Evidence That It Has Ceased To Exist ......................... 10

        (9)    In June, 2007, "Local 715" Is Purportedly Placed Under Trusteeship, And The Trustee Appoints New Counsel ................... 11

        (10)   Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But Refuse To Clarify Their Representative Capacity ......... 12

        (11)   The Hospitals Make Formal Information Requests Pursuant To The NLRA ...................................................................... 12

III.  DISCUSSION ............................................................................ 13

    A.    Legal Standards Applicable To Summary Judgment Motions ................. 13

    B.    The Hospitals Are Not Required To Arbitrate The Grievances Because Local 715 Has Effectively Ceased To Exist ................................. 14

i

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

(1)   SEIU Adopted And Implemented A Plan That Expressly Called For The Dismemberment And Dissolution Of Local 715 ........................................................................................ 15

(2)   The Bulk Of Local 715's Former Membership And Functions Were Merged Into Local 521 .............................................. 16

(3)   Local 715's Private Hospital Members And Functions Were Transferred To UHW ............................................................ 16

a)   Under The Guise Of An Invalid Servicing Agreement, Local 715 Assigned Its Representative Functions To UHW ........................................................................ 17

b)   UHW Began Receiving Dues Deducted From Bargaining Unit Members Paychecks ................................. 18

c)   Bargaining Unit Employees Were Asked To Agree To Change Their Union Affiliation To UHW ........................... 18

d)   President Stern Ordered The "Reorganization" Of Local 715 Into UHW, And Chief Shop Steward Robert Rutledge Admitted That Local 715 Had Ceased To Exist ......................................................................... 18

e)   "Local 715" Is Represented By UHW's Legal Counsel ....... 19

f)   UHW Holds Itself Out As The Representative Of The Bargaining Unit ....................................................... 19

(4)   As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No Obligation To Arbitrate The Simien, Satuito or Andrade Grievances .......................................................... 20

(5)   The Maintenance Of Local 715 As A Sham Organization Does Not Change The Result .................................................... 20

C.   Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not Required To Participate In Grievance And/Or Arbitration Proceedings With Representatives Of UHW ................................ 21

D.   If The Court Decides That These Cases Present A Representational Issue On Which It Should Not Rule, It Should Issue A Stay .................... 23

IV.   CONCLUSION .................................................................... 24

SFCA_1424228.4

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................14

*Brooks v. National Labor Relations Board*,
    348 U.S. 96 (1954)...............................................................................................14

*Celotex Corporation v. Catrett*,
    477 U.S. 317 (1986)...............................................................................................14

*Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corporation*,
    961 F.2d 1464 (9th Cir. 1992) ...............................................................................23

*International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers And Helpers, AFL-CIO v. Local Lodge D354*,
    897 F.2d 1400 (7th Cir. 1990) ...............................................................................15

*Local No 3-193 International Wood-Workers Of America v. Ketchikan Pulp Company*,
    611 F.2d 1295 (9th Cir. 1980) ...............................................................................23

*Lorber Industries Of California v. Los Angles Printworks Corporation*,
    803 F.2d 523 (9th Cir. 1986) ...............................................................................14

*Matushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1985)...............................................................................................14

*Medo Photo Supply Corporation v. National Labor Relations Board*,
    321 U.S. 678 (1944)...............................................................................................14

*Moruzzi v. Dynamics Corporation Of America*,
    443 F.Supp. 332 (S.D.N.Y. 1977) ........................................................14, 15, 21, 23

*National Labor Relations Board v. Safeway Stores, Inc.*,
    622 F.2d 425 (9th Cir. 1980) ...............................................................................13

*Pioneer Inn Associates v. National Labor Relations Board*,
    578 F.2d 835 (9th Cir. 1978) ...............................................................................14

**REGULATORY CASES**

*Goad Company*,
    333 NLRB 677 (2001) ...............................................................................22

SFCA_1424228.4

*Nevada Security Innovations, Ltd.*,
    341 NLRB 953 (2004) ...................................................................................................14

*Sherwood Ford, Inc*,
    188 NLRB 131 (1971) ...................................................................................................22

*Sisters Of Mercy Health Corporation*,
    277 NLRB 1353 (1985) .................................................................................................15


**FEDERAL STATUTES**

29 U.S.C. § 185 .............................................................................................................23


**RULES**

Fed.R.Civ.P.
    Rule 56 ..........................................................................................................................1, 14
    Rule 56(c) ......................................................................................................................13

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

**NOTICE OF MOTION AND MOTION**

TO THE PETITIONER AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 29, 2008 at 9:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, 5th Floor, Courtroom 3, Respondents Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") will and hereby do move the Court for summary judgment or, in the alternative, summary adjudication of claims or defenses (the "Motion") pursuant to Federal Rule of Civil Procedure ("Fed. Rule of Civ. P.") 56.

By this Motion, the Hospitals seek an order by this Court denying the Petitions of Service Employees International Union, Local 715 ("Local 715") and holding that the Hospitals are entitled to judgment as a matter of law in Case Nos. 5:08-CV-00216-JF ("Simien"), 5:08-CV-01726-JF ("Satuito"), and 5:08-CV-01727-JF ("Andrade") on the grounds that the Hospitals cannot be compelled to arbitrate the matters at issue because Local 715 has ceased to exist or, in the alternative, that the entity or persons seeking to arbitrate with the Hospitals are not Local 715 and therefore lack standing to require the Hospitals to arbitrate. This Motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Laurie J. Quintel, Laurence R. Arnold, and Scott P. Inciardi, all pleadings and papers on file in this action and upon such other matters as may be presented to the Court at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This action concerns the issue of whether the respondents, Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") are required to participate in arbitration with the petitioner, Service Employees International Union, Local 715 ("Local 715") pursuant to a collective bargaining agreement (the "CBA"). The Hospitals do not dispute that the matters that would be arbitrated, grievances over employment actions taken with respect to current or former Hospital employees by the name of John Simien (the "Simien Grievance"), James Satuito (the "Satuito Grievance") and Jesus Andrade (the "Andrade Grievance) are within the scope of

1

SFCA_1424228.4

issues that are arbitrable under the CBA.  There is, however, a threshold factual determination that must be made before the Hospitals can be required to arbitrate the matters – that determination being the identity of the party seeking to require the Hospitals to arbitrate.  It is this issue that is addressed in the present motion.

It is indisputable that the only entity with which the Hospitals are obligated to arbitrate is Local 715.  It is Local 715 that was certified as the exclusive representative of the relevant bargaining unit of Hospital employees (the "Bargaining Unit") under the CBA.  Indeed, Local 715 was the signatory to the CBA that creates the obligation to arbitrate.  However, as the Hospitals will demonstrate, as a result of a plan implemented by the Service Employees International Union ("SEIU" or the "International"), as of approximately March 1, 2007, Local 715 effectively ceased to exist.

As a result of SEIU's actions most, if not all, of Local 715's former assets and functions were transferred to a new local union known as Service Employees International Union, Local 521 ("Local 521").  Additionally, under the guise of an invalid "Servicing Agreement," Local 715's representative duties were wholly transferred to a local union known as Service Employees International Union, United Healthcare Workers – West ("UHW").

Under the National Labor Relations Act (the "NLRA" or "Act") the Hospitals are required to recognize Local 715, and no other organization, as the bargaining representative of its employees.  Additionally, the CBA obligates the Hospitals to arbitrate disputes with Local 715, and no other.  As Local 715 effectively ceased to exist as a viable labor organization, the Hospitals can have no obligation to arbitrate with it.  Furthermore, whether or not Local 715 continues to exist, the Hospitals cannot be forced to arbitrate with representatives of UHW.  The Hospitals, therefore, seek an order denying Local 715's petitions to compel arbitration and dismissing the-above referenced actions.

## II.    STATEMENT OF FACTS

The following facts cannot genuinely be disputed and are material to the issues raised in the Simien, Andrade and Satuito actions.

///

A.    **The Certification And Collective Bargaining Agreement**

In 1998, after a National Labor Relations Board (the "Board")-conducted election, the Board issued an order certifying "Local 715, Service Employees International Union, AFL-CIO" as the "exclusive collective bargaining representative" of a unit of Hospital employees described in the order (the "Certification")[1]. [Declaration of Laurence R. Arnold In Support Of Motions ("Arnold Decl.") ¶ 2-3 & Exh. A.] Pursuant to the Certification, the Hospitals recognized Local 715 as the exclusive bargaining representative and subsequently negotiated a series of collective bargaining agreements. [Arnold Decl. ¶ 4.] The current CBA became effective on January 20, 2006, and is scheduled to expire on November 4, 2008. [Arnold Decl. ¶ 4.] Article 1.1 of the CBA states that the CBA "is made and entered into between Stanford Hospital and Clinics (SHC) and Lucile Packard Children's Hospital (LPCH) . . . and the Service Employees International Union, Local 715, AFL-CIO, CLC (hereinafter referred to as "Union")." [Arnold Decl. ¶ 4-6 & Exh. B.] Article 1.3.1 of the CBA contains a "Recognition Clause," which states that, pursuant to the Board's Certification, "the Employer recognizes the Union, as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees. [Arnold Decl. ¶ 4-6 & Exh. B.]

Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged. [Arnold Decl. ¶ 8 & Exh. B.] Article 26.2.1 of the CBA states that "The Union" (i.e. Local 715) "will have the right to present grievances under this procedure on behalf of an individual employee, on behalf of a group of employees, or on behalf of itself as a Union grievance." [Arnold Decl. Exh. B.] Article 26.2.3.e provides that "only the Union" (Local 715) "may appeal a grievance to arbitration." [Arnold Decl. Exh. B.]

B.    **The Grievances**

The grievances at issue were filed between March and May, 2007. [Declaration of Laurie J. Quintel In Support Of Motions ("Quintel Decl.") ¶ 62, 66 & 70 & Exh. QQ, TT, &WW.] The

---

[1] Simien, Andrade and Satuito are each within the unit of Hospital employees described in the order.

Simien Grievance alleged that the Hospitals violated the CBA by giving Simien a warning and forcing him to change his shift.  [Quintel Decl. ¶ 66 & Exh. TT.]  The Satuito and Andrade Grievances alleged that the Hospitals' termination of those two employees violated the CBA.  [Quintel Decl. ¶ 62 & 70 & Exh. QQ & WW.]  The Hospitals denied each grievance.  [Quintel Decl. ¶ 63, 67 & 71.]  Thereafter, representatives from the law firm of Weinberg, Roger & Rosenfeld (the "Weinberg Firm" or "Weinberg") contacted the Hospitals seeking to arbitrate the matters.  [Arnold Decl. ¶ 55 & Exh. UU.]  As will be fully explained below, the Hospitals, by this time, had concluded that Local 715 had effectively ceased to exist and/or that the Weinberg attorneys seeking to arbitrate the matter were actually acting on behalf of UHW.  On this basis, the Hospitals refused to arbitrate the matters.  [Arnold Decl. ¶ 56 & Exh. VV.]

**C.**     **Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW**

Beginning in early 2006, Local 715 underwent changes that, as of at least March, 2007, effectively extinguished it as an ongoing operation.  These events were made known to the Hospitals in a piecemeal fashion, eventually causing the Hospitals to conclude that Local 715 had ceased to exist, and/or improperly had attempted to transfer its bargaining rights to UHW.

**(1)     Local 715 Enters Into A "Servicing Agreement" With UHW**

Between February 18 and February 20, 2006, shortly after the CBA became effective, Sal Roselli, the President of UHW, and Kristy Sermersheim, the Executive Secretary of Local 715, executed a three (3) page document titled "Servicing Agreement" (the "Servicing Agreement"). [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In  Support Of Motions ("Inciardi Decl.) Exh. EE.]  The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Id.]  The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the Servicing

SFCA_1424228.4

Agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Id.] By its terms, the Servicing Agreement was to be effective as of March 1, 2006. [Id.]

(2)     In March, 2006, UHW Assumes Local 715's Functions

On February 28, 2006, Greg Pullman, Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges. [Quintel Decl. ¶ 9.] Around the same time, Ms. Hereth brought another person named Rachel Deutsch to Ms. Quintel's office. Ms. Deutsch identified herself as a representative of UHW and informed Ms. Quintel that UHW would be taking over representation for the Hospitals. [Quintel Decl. ¶ 10.] When Ms. Quintel sought clarification, Mr. Pullman assured Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis." [Quintel Decl. ¶ 11-12 & Exh. B.] The Hospitals accepted this representation for the time being. [Quintel Decl. ¶ 13.]

(3)     Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct

Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees. In particular, letters relating to grievances and information were sent to the Hospitals by UHW employees on UHW stationery. Some of these letters stated that the grievances in question were filed "on behalf of SEIU UHW" or referred to Bargaining Unit employees as "members" of UHW. [Quintel Decl. ¶ 15 & Exh. D.] During the same period, Ms. Hereth sent a letter to Ms. Quintel instructing her to "direct all SEIU correspondence" to "Ella Hereth and Rachel Deutsch, SEIU United Healthcare Workers – West." [Quintel Decl. ¶ 14 & Exh. C.] On May 22, 2006, Ms. Olick informed the Hospitals that "I and Ella Hereth do not work for SEIU 715. SEIU-UHW is doing the representation work here at Stanford Hospital." [Quintel Decl. ¶ 20 & Exh. H.] Mr. Pullman stated in an e-mail sent the

5

1   same day, that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San

2   Francisco office are handling *all representation matters* for SEIU Local 715." [Quintel Decl. ¶

3   20 & Exh. H (emphasis supplied).] On May 26, 2006, Ms. Quintel received an e-mail from Ms.

4   Olick in which Ms. Olick purported to have authority to accept changes to the CBA. [Quintel

5   Decl. ¶ 21 & Exh. I.]

6       Between March and May, 2006, the Hospitals also received communications from the

7   Weinberg Firm, which had historically acted as Local 715's attorneys, suggesting that Local 715

8   was no longer acting as the bargaining representative. On or around March 28, 2006, W. Daniel

9   Boone of the Weinberg Firm wrote a letter to Laurence R. Arnold, an attorney with the law firm

10  of Foley & Lardner LLP, which represents the Hospitals, regarding a pending grievance. In the

11  subject line of his letter, Mr. Boone referred to "United Healthcare Workers – West (formerly

12  SEIU, Local 715)."[2] [Arnold Decl. ¶ 26 & Exh. S.]

13      In early April, 2006, Ms. Quintel received a telephone call from Phyllis Willett, who

14  identified herself as an employee of UHW and stated that when the Hospitals remitted union

15  dues, they needed to provide the social security numbers of the relevant employees to help UHW

16  identify them. [Quintel Decl. ¶ 16.] Around April 17, 2006, Ms. Quintel received a letter from

17  William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU

18  United Healthcare Workers West" and requested that the Hospitals provide information

19  pertaining to Bargaining Unit employees, and the dues deducted from their paychecks. [Quintel

20  Decl. ¶ 17 & Exh. E.]

21              **(4)    The Hospitals Refuse To Deal With UHW Employees**

22      In May and June, 2006, due to the mounting evidence that, rather than providing limited

23  "professional services," UHW was actually assuming all of Local 715's former functions, the

24  Hospitals made clear that they did not consent to any transfer of bargaining rights from Local

25  715 to UHW, and that the Hospitals would not deal with employees of UHW. [Quintel Decl. ¶

26

27  [2] When questioned about this reference, Mr. Boone wrote a letter stating that it was in error.
    However, the subject line of that letter continued the use of the reference. [Arnold Decl. ¶ 25-28
28  & Exh. R-W.]

6

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]  In June, 2006, Hospitals also requested information from Local 715 regarding the organization's current status and the role of UHW, given the indications that Local 715 had abandoned, or was abandoning, its status as certified representative.  [Arnold Decl. ¶ 32 & Exh. Z.]

### (5)    SEIU Implements A Plan To Reorganize SEIU Locals

On June 9, 2006 the SEIU issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  [Inciardi Decl. Exh. T.]  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities  . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T at 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

Two days later, on June 11, 2006, Andrew L. Stern, International President of the SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that the SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

### (6)    The Hospitals Determine That The Servicing Agreement Is Not Legitimate.

On June 15, 2006, Mr. Arnold received a letter from Mr. Pullman regarding the Hospitals' request for information on Local 715 and its relationship with UHW.  Mr. Pullman assured Mr. Arnold that "The two employees we have asked SEIU-UHW to provide are under the direction of Local 715 and are there to represent Local 715 and its bargaining unit at Stanford

7

SFCA_1424228.4

Hospital.  That is all that is happening."  [Arnold Decl. ¶ 34 & Exh. AA.]  However, by this time, through their own investigation, the Hospitals had learned of the Joint Report and the Stern Memorandum and could not accept Mr. Pullman's assurances.  The Hospitals requested more information, including a copy of the Servicing Agreement.  [Arnold Decl. ¶ 35 & Exh. BB.]

The Hospitals received the Servicing Agreement in mid August and reviewed it.  [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]  Upon review, it was apparent that the document did not fully or accurately describe the relationship between Local 715 and UHW.  While the Servicing Agreement called for UHW personnel to provide services under the direction of Local 715, the actual conduct of the UHW employees who were performing such services, along with the statements made by Mr. Pullman and others, reflected that Local 715 had totally abdicated its representative duties and had assigned them to UHW in accordance with the SEIU's reorganization plan.[3]  [Arnold Decl. Exh. EE.]  Accordingly, in a letter dated August 29, 2006 addressed to Ms. Sermersheim, Mr. Arnold stated that the Hospitals did not recognize the Service Agreement, and would not deal with employees of UHW acting pursuant to it.  [Arnold Decl. ¶ 38 & Exh. EE.]

### (7)    In Early 2007, Local 715 Prepares To Disband Itself And Its Representatives Confirm That It Has Ceased To Exist

On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521."  President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, ***and are hereby***, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U (emphasis supplied).]  Such "reorganization" was to take place as soon as practicable.

On January 31, 2007, Robert W. Rutledge, Chief Steward for the Bargaining Unit, sent an e-mail to Senior Employee and Labor Relations Specialist Valerie Jeffries with a copy to Ms.

---

[3] This included, contrary to the Servicing Agreement, the right to collect and receive dues, as Mr. Sokol's April 17, 2006 letter made clear.

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

Quintel.[4]  In the course of that e-mail, Mr. Rutledge wrote, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Although copies of this e-mail were also sent to Ms. Olick (a purported agent of Local 715 under the Service Agreement) and Kim Tavaglione, another employee of UHW, neither of them responded to contradict Mr. Rutledge's assertion that Local 715 had ceased to exist.[5]  [Quintel Decl. ¶ 28 & Exh. O.]  At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed.  [Quintel Decl. ¶ 29.]  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW.  [Quintel Decl. ¶ 29.]

Local 715 maintained a website located at http://www.SEIU715.org (the "Local 715 Website").  Beginning in late January, 2007, Laurie Quintel began to monitor the Local 715 Website.  She discovered that the website now contained a prominent statement that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information."  [Quintel Decl. ¶ 30 & Exh. P.]

On March 1, 2007, Ms. Quintel discovered that when she attempted to access the Local 715 Website, she was now automatically redirected to the website of Local 521 at http://www.SEIU521.org (the "Local 521 Website").  [Quintel Decl. ¶ 32.]  In exploring the Local 521 Website, Ms. Quintel discovered a page containing a statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members."  [Quintel Decl. ¶ 32 & Exh. R.]  On March 5, Ms. Quintel discovered the following statement on the Local 521 Website:  "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On

---

[4] Because, by this time, the Hospitals were refusing to deal with UHW employees, the shop stewards appointed by Local 715 prior to March 1, 2007 were the Hospitals main point of contact with the purported Local 715.  [Quintel Decl. ¶ 25.]

[5] Notably, no one associated with Local 715 was even copied on the e-mail.

SFCA_1424228.4

January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

When Ms. Quintel used the Local 521 Website's search feature to find the Hospitals, her search returned no results.  [Quintel Decl. Exh. X.]  However, when, on March 2, 2007, she performed a similar search on the UHW Website (http://SEIU-UHW.org), "Stanford University Medical Center" was listed as a facility represented by UHW.[6]  [Quintel Decl. ¶ 34 & Exh. S.]

At the same time that these statements were being posted on the SEIU Locals' websites, Local 715's purported representatives were responding to the Hospitals' inquiries regarding the status of Local 715 by baldly asserting that it continued to exist and had undergone no changes. [Quintel Decl. ¶ 39 & Exh. W.]

### (8)    The Hospitals Cease Remitting Dues To Local 715 In Light Of The Evidence That It Has Ceased To Exist

It was now clear to the Hospitals that, at least as of March 1, 2007, Local 715 had ceased to exist.  Yet, under the CBA, the Hospitals were obligated to deduct union dues from Bargaining Unit employees' paychecks and remit them to Local 715.  The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, called for remittance of the dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]  The Hospitals determined that they could no longer remit dues to "Local 715" now that the organization apparently was no more and its former representatives refused to demonstrate otherwise.  [Quintel Decl. ¶ 36-37.]  Accordingly, on March 2, 2007, Ms. Quintel sent a letter to Ms. Sermersheim that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.[7]

---

[6] UHW has continued to assert on its website that it represents the Hospitals since that time, as screenshots from its website taken in March, 2008 reveal.  [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

[7] In fact, evidence later came to light that Local 521 was the actual recipient of the dues being remitted to Local 715.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used

SFCA_1424228.4

1    [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and after March 1,

2    2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to

3    deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank

4    account established for that purpose, a procedure that continues to this date.  [Quintel Decl. ¶

5    37.]

6                **(9)    In June, 2007, "Local 715" Is Purportedly Placed Under Trusteeship,**

7                **And The Trustee Appoints New Counsel**

8            On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi

9    Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had

10   ceased to exist, and the transfer of the bulk of Local 715's former members and resources to

11   Local 521, the SEIU was placing Local 715 under trusteeship, removing its officers, and

12   appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's

13   reorganization plan remained in place and that the remaining members of Local 715 would be

14   "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."

15   [Inciardi Decl. Exh. Z.]  Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of

16   the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that

17   UHW employees would continue to "service" the Hospitals.[8]  [Quintel Decl. ¶ 48 & Exh. FF.]

18           Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm

19   Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold

20   confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold

21   Decl. ¶ 40 & Exh. FF.]

22

---

23   acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had
     been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was
24   the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for
     February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]  Additionally, given
25   UHW's requests for identifying information for Hospital employees in early 2006, it appeared
     that the ultimate recipient of the dues sent to "Local 715" could be UHW.
26

27   [8] The letter was sent to Ms. Quintel via facsimile transmission ("fax").  Notably, the information
     line automatically printed by the sending fax machine (the "fax stamp") indicated that the fax
28   originated from "SEIU 521."  [Quintel Decl. ¶ 48 & Exh. FF.]

---

11

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

**(10)  Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But Refuse To Clarify Their Representative Capacity**

To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715". [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.] Nevertheless, the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters. [Arnold Decl. ¶ 49 & 55 & 65 & Exh. UU & EEE.] Weinberg Firm attorneys also appeared in each arbitration hearing that was held after the appointment of the Altshuler Firm as counsel. [Arnold Decl. ¶ 46 & 49 & Exh. LL.] The Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement. [Quintel Decl. ¶ 17 & Exh. E.] The Hospitals became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of the rejected Servicing Agreement. Accordingly, beginning on August 24, 2007, Mr. Arnold made repeated requests of both Ms. Chisholm and Mr. Smith to clarify whether the Weinberg Firm was representing Local 715 directly, or was acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 49 & Exh. NN.] These requests were met with silence or outright refusal to provide the information requested. [Arnold Decl. ¶ 50-53 & Exh. OO-RR.] The Hospitals could only conclude that the Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local 715's" behalf were made under authority of the rejected Servicing Agreement. Therefore, by a letter dated October 16, 2007, Mr. Arnold informed Ms. Chisholm that the Hospitals would no longer participate in any grievance or arbitration proceedings in which the Weinberg Firm appeared absent assurances that the appearance was made directly on behalf of Local 715 and not pursuant to the invalid Servicing Agreement. [Arnold Decl. ¶ 53 & Exh. RR.] To date, neither the Weinberg Firm nor the Altshuler Firm have provided the Hospitals with the requested assurance.

**(11)  The Hospitals Make Formal Information Requests Pursuant To The NLRA**

Under the NLRA, a party to a collective bargaining relationship is legally required to

12

SFCA_1424228.4

1   provide information requested by the other party, and relevant to the requesting party's duties

2   and obligations under the collective bargaining agreement.  The failure to do so constitutes a

3   refusal to bargain in violation of the Act.  *National Labor Relations Board v. Safeway Stores,*

4   *Inc.*, 622 F.2d 425, 429 (9th Cir. 1980)  Although the Hospitals no longer believed that Local

5   715 existed, Local 715's purported representatives continued to insist that it did exist.  Therefore,

6   in order to obtain the facts that would permit the Hospitals to test Local 715's claim of continued

7   existence, the Hospitals filed unfair labor practice charges against Local 715 asserting that its

8   refusal to provide requested information was unlawful.[9]  [Quintel Decl. ¶ 46 Exh. DD; Arnold

9   Decl. ¶ 54 & Exh. SS-TT.]  Region 32 of the NLRB issued a complaint on the ULP charges and

10  a hearing was held before an administrative law judge ("ALJ") on May 6, 2008.  [Arnold Decl. ¶

11  71-73 & Exh. LLL.]  To date, the ALJ has not issued a decision in the case.  [Arnold Decl. ¶ 73.]

12  **III.    DISCUSSION**

13          **A.    Legal Standards Applicable To Summary Judgment Motions**

14          Summary judgment is appropriate "if the pleadings, depositions, answers to

15  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

16  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

17  matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of

18  informing the court of the basis for its motion and identifying those portions of "'the pleadings,

19

---

20  [9] In fact, Local 715's refusal (or inability) to produce any information that could substantiate its
21  claim that it continues to exist is an ongoing theme.  The Hospitals have propounded discovery
    on Local 715, as well as Local 521 and UHW (all of whom are represented by the Weinberg
22  Firm) seeking information on, among other things, Local 715's continued existence.  Local 715
    refused to produce anything but a paltry thirty-four (34) pages of documents.  Local 521 and
23  UHW refused to produce any documents.  The Hospitals, therefore, have been forced to file
    motions to compel with this Court to secure adequate responses, and have been forced to file this
24  Motion without the benefit of such responses.  [5:08-CV-00216 JF Dkt No. 33-35; 5:08-CV-
    01726 JF Dkt No. 16-18; 5:08-CV-01727 JF Dkt No. 16-18.]  In addition, the Hospitals have
25  also filed a motion to continue the hearing on the present motion and related deadlines due to the
    failure of the union entities to provide discovery responses.  [5:08-CV-00216, Dkt. #28-30; 5:08-
26  CV_01726, Dkt. # 11-13; and 5:08-CV-01727, Dkt. #11-13].  It is also significant, that Local
    715 itself filed a charge with the NLRB against the Hospitals alleging that the Hospitals
27  unlawfully refused to deal with its purported trustee.  Region 32 of the NLRB, however,
    dismissed the charge when Local 715 refused or failed to provide any evidence that it actually
28  existed, as requested by the NLRB.  [Arnold Decl. ¶ 73 & Exh. MMM.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56). The non-moving party is not entitled to rest on the mere allegations of its pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted). Material facts "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). There is no genuine basis of material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of a party opposing summary judgment. *See Matushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1985).

**B.    The Hospitals Are Not Required To Arbitrate The Grievances Because Local 715 Has Effectively Ceased To Exist**

It is well-established that, where the NLRB certifies a union as the exclusive bargaining representative of an employer's workers pursuant to the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from bargaining with any other union. *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd*., 341 NLRB 953, 955 (2004). It follows that, where the certified union has ceased to exist, the employer's bargaining obligation is at an end. *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

Likewise, where an employer and the certified union negotiate a collective bargaining agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the employer no longer has any obligation to arbitrate because only the union has standing to compel arbitration. *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the agreement"). Where the certified union has ceased to exist, its former officials or representatives

14

1    do not have standing to compel arbitration under its name.  Thus, in *Moruzzi, supra*, where the

2    union went out of existence, its former president "became neither the successor to nor the

3    assignee of the defunct [union] by adopting its name" and he therefore lacked standing to compel

4    arbitration in the former union's name.  *Moruzzi, supra*, 443 F.Supp. at 337.  Indeed, the Court

5    lacks jurisdiction over a suit by or against a union, where that union does not actually exist.

6    *International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers And*

7    *Helpers, AFL-CIO v. Local Lodge D354*, 897 F.2d 1400, 1402-1403 (7th Cir. 1990) ("two

8    opposing parties are minimally required to create a case or controversy.").

9        In this case, demands for arbitration have been made by a party claiming to be Local

10   715.[10]  However, the undisputed evidence demonstrates that, on or around March 1, 2007,

11   pursuant to a explicit plan adopted by the SEIU International, Local 715 effectively ceased to

12   exist.  The "trustee" can become neither the successor to, nor the assignee of the no longer

13   existing Local 715, nor may it be resurrected once it ceased to exist as a viable labor

14   organization.  *Sisters Of Mercy Health Corporation*, 277 NLRB 1353, 1354 (1985); *Moruzzi,*

15   *supra*, 443 F.Supp. at 337.[11]  Therefore, the Hospitals have no obligation to arbitrate the

16   grievance in question.  Indeed, the Court lacks jurisdiction over this case.

17           **(1)    SEIU Adopted And Implemented A Plan That Expressly Called For**

18                   **The Dismemberment And Dissolution Of Local 715**

19        It cannot be disputed that SEIU developed and adopted a reorganization plan for

20   California SEIU locals.  It is further undisputed that the plan openly called for the bulk of Local

21   715 to be absorbed by Local 521, and for Local 715's duties at private hospitals, including those

---

[10] The Hospitals' position is that Local 715 ceased to exist after March 1, 2007, or thereabouts.
The Hospitals anticipate that Local 715 will contend (despite the evidence to the contrary) that it
continues to exist.  References are, for this reason, made to "Local 715" relating to the time
period after March 1, 2007.  These references do not represent, and should not be construed as,
an admission that Local 715 continued to exist after that date.

[11] In fact, as late as November, 26, 2007, a union shop steward and former executive board
member of Local 715 asserted on the record at a meeting of the Palo Alto City Council that the
employees of the Hospitals are represented by "SEIU-UHW."  [Quintel Decl. ¶ 58 & Exh. NN p.
36-38.]

SFCA_1424228.4

1   at the Hospitals, to be given over to UHW.  [Inciardi Decl. Exh. T p. 42-43; 61-62 & 65; Quintel

2   Decl. Exh. K p. 2-4]  In the meantime, the Joint Report noted that UHW was "actually servicing"

3   private hospital employees represented by Local 715 pursuant to servicing agreements.[12]

4   [Inciardi Decl. Exh. T p. 16.]

5          Although neither the Joint Report nor the accompanying memorandum expressly state

6   that Local 715 would no longer exist after the contemplated reorganization, it is clear that this is

7   what was contemplated and was the *de facto* result, as no mention is made of any future role for

8   Local 715 after all of its former functions were merged into other locals.

9              **(2)    The Bulk Of Local 715's Former Membership And Functions Were**

10                  **Merged Into Local 521**

11         In January, 2007, International President Stern ordered that the SEIU reorganization plan

12  be implemented as soon as practicable.  [Inciardi Decl. Exh. U.]  It cannot be disputed that, after

13  President Stern's order, Local 715 publicly announced that it was "in the process of transitioning

14  to our new local 521" and that the Local 715 Website would be "taken down" on the last day of

15  February, 2007.  [Quintel Decl. ¶ 30 & Exh. P.]  It is further undisputed that, after March 1,

16  2007, Local 521 publicly announced that Local 715 and other locals "have come together" and

17  formed "one larger, more powerful local" and that, "On March 1, 2007, the resources of all five

18  locals were transferred to Local 521."[13]   [Quintel Decl. ¶ 40 & Exh. X.]

19             **(3)    Local 715's Private Hospital Members And Functions Were**

20                  **Transferred To UHW**

21         Apparently, due in large part to the Hospitals' resistance, the transfer of Local 715's

22  private hospital operations to UHW was conducted less openly than the merger into Local 521.

23

24  [12] The language used in the joint report is telling.  It did not state that UHW was "assisting" or
    "providing services" to Local 715.  Rather, it was "actually servicing" the Bargaining Unit.

25  There was no qualification that it was doing so on behalf of Local 715.  This choice of language
    reflect the reality of the situation – pursuant to the International's wishes, Local 715 had stepped

26  aside to allow UHW to become the bargaining representative in substance, if not in name.

27  [13] In an apparent effort to maintain the fiction of its continued existence, the Local 715 Website
    was subsequently re-established.  However, the website was virtually devoid of content.  [See

28  Declaration Of Scott P. Inciardi, ¶ 2-23 & Exh. A-B.]

SFCA_1424228.4

1    [Inciardi Decl. Exh. W p. 4.]  However, there is no doubt that the transfer did take place, and

2    Local 715 has ceased to exist.

3                    a)        **Under The Guise Of An Invalid Servicing Agreement, Local**

4                              **715 Assigned Its Representative Functions To UHW**

5            The process of merging Local 715's private hospital operations into UHW began with the

6    execution of servicing agreements through which UHW replaced Local 715 as the entity actually

7    carrying out representative duties.  [Inciardi Decl. Exh. T p. 16.]  In the case of the Hospitals, the

8    applicable servicing agreement was executed in February, 2006.  [Arnold Decl. Exh. CC.]

9    Thereafter, although Local 715 nominally retained its status as the bargaining representative,

10   UHW aggregated to itself all significant representational duties (or at least attempted to do so).

11   Thus, admitted employees of UHW were assigned to deal with the Hospitals regarding matters of

12   contract negotiation and employee grievances, and the Hospitals were instructed to send all

13   correspondence directly to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 1-

14   13 & Exh. B-C.]  UHW employees submitted grievances on behalf of Bargaining Unit

15   employees on UHW letterhead, and referred to those employees as members of UHW.  [Quintel

16   Decl. ¶ 15 Exh. D.]  Greg Pullman confirmed in an e-mail that UHW employees "handling ***all***

17   ***representation matters*** for SEIU Local 715."  [Quintel Decl. ¶ 18 & Exh. F (emphasis

18   supplied).]  At the same time, UHW employee Jocelyn Olick confirmed in an e-mail that she and

19   the other UHW employees assigned to "service" the Bargaining Unit did not work for Local

20   715.[14]  [Quintel Decl. ¶ 20 & Exh. H.]

21   ///

22   ///

23

24   [14] At the same time that SEIU was carrying out a *de facto* transfer of Local 715's members and
     functions to UHW, Local 715's representatives attempted to conceal the true nature of what was
25   transpiring.  On June 14, 2006, shortly after the formal adoption of the SEIU reorganization plan
     calling for the transfer of Local 715's private hospital operations to UHW and the dissolution of
26   Local 715, Greg Pullman wrote a letter to Mr. Arnold claiming that Local 715 had asked two (2)
     UHW employees "to help enforce the collective bargaining agreement" and that "[t]hat is all that
27   is happening."  [Arnold Decl. ¶ 34 & Exh. AA.]  When correspondence on UHW letterhead or
     claiming to be on behalf of UHW members was rejected, it was simply re-submitted on Local
28   715 letterhead  [Quintel Decl. ¶ 60 & Exh. OO.]

                                                   17

SFCA_1424228.4

1          **b)      UHW Began Receiving Dues Deducted From Bargaining Unit**

2                    **Members Paychecks**

3          That UHW had stepped into the shoes of Local 715 is also demonstrated by the fact that,

4  in early April, 2006 UHW began receiving from Local 715 the dues deducted from Bargaining

5  Unit employees' paychecks and sent to Local 715 by the Hospitals.  This is demonstrated by the

6  undisputed fact that persons admittedly acting on behalf of UHW demanded information from

7  the Hospitals for the express purpose of processing the dues deducted from Bargaining Unit

8  employees' paychecks (although the Servicing Agreement called for UHW to provide "services"

9  free of charge).  [Quintel Decl. ¶ 16-17 & Exh. E.]

10          **c)      Bargaining Unit Employees Were Asked To Agree To Change**

11                    **Their Union Affiliation To UHW**

12          In September, 2006, Bargaining Unit employees were asked to ratify the reorganization

13  plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to

14  Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille

15  Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers –

16  West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

17          **d)      President Stern Ordered The "Reorganization" Of Local 715**

18                    **Into UHW, And Chief Shop Steward Robert Rutledge**

19                    **Admitted That Local 715 Had Ceased To Exist**

20          On January 2, 2007, International President Stern issued the order that the employees

21  formerly represented by Local 715 were to be "reorganized" (a euphemism for merged) into

22  other locals, and specifically directed that the Hospital employees formerly represented by Local

23  715 were to be "reorganized" into UHW as soon as practicable.  [Inciardi Decl. Exh. U.]

24          On January 31, 2007, Local 715's Chief Shop Steward, Robert Rutledge stated in an e-

25  mail that "SEIU 715 no longer exists and a service agreement between the former 715 and UHW

26  has been in place since March first of 2006."[15]  [Quintel Decl ¶ 28-29 & Exh. O.]  Mr. Rutledge

27  _____

28  [15] By linking the defunct status of Local 715 with the Servicing Agreement, Mr. Rutledge thus
    confirmed what was apparent – that the execution of the Servicing Agreement was an integral

SFCA_1424228.4

1   confirmed this statement in a meeting with Ms. Quintel two (2) days later in which he stated that

2   Local 715 no longer represented the Bargaining Unit, that it had ceased to exist, and that UHW

3   now represented the Bargaining Unit.  [Quintel Decl ¶ 29.]

e)   **"Local 715" Is Represented By UHW's Legal Counsel**

5   Historically, Local 715 was represented by the Weinberg Firm, which has also long

6   represented UHW.  [Arnold Decl. ¶ 9-10.]  In June, 2007, SEIU purported to place Local 715

7   under trusteeship, and the trustee, Bruce "Rusty" Smith, designated new counsel for Local 715 –

8   the Altshuler Firm.  [Arnold Decl. ¶ 40 & Exh. FF.]  Nevertheless, after the appointment of the

9   Altshuler Firm as Local 715's counsel the Weinberg Firm continued to request to bargain, appear

10  in grievance and arbitration proceedings, and issue correspondence purportedly on behalf of

11  "Local 715".  [Arnold Decl. ¶ 47; 49; 55; & 65 & Exh. UU & EEE; Quintel Decl. ¶ 54-55 &

12  Exh. K-L.]  Despite repeated requests by the Hospitals, neither the Weinberg Firm, nor the

13  Altshuler Firm, nor Mr. Smith himself, were willing to make a simple representation that the

14  Weinberg Firm was representing Local 715 directly.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]

15  Their refusal – even when under legal compulsion – to make this simple representation can only

16  lead to the conclusion that the Weinberg Firm is not representing Local 715 directly.  Instead, it

17  is retained by and represents UHW and is providing legal services pursuant to the invalid

18  Servicing Agreement.  Its position, therefore, is no different than UHW itself, which has

19  attempted to assume the representative duties formerly held by the now defunct Local 715 under

20  the guise of the rejected Servicing Agreement.

f)   **UHW Holds Itself Out As The Representative Of The**

**Bargaining Unit**

23  Notwithstanding the disingenuous claims that Local 715 continues to exist and represent

24  the Bargaining Unit, UHW publicly asserts that it, not Local 715, represents the Bargaining Unit.

25  The UHW Website lists "Stanford University Medical Center" among the facilities that it claims

26  to represent and lists Myriam Escamilla as the "UHW Representative" assigned to the facility.

---

28  part of the plan to disband Local 715 and was designed to further that purpose.

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

[Inciardi Decl. ¶ 29-30 & Exh. C20-C22.]  The UHW Website also contains a document listing those collective bargaining agreements scheduled to expire in 2008 for the units represented by UHW.  "Stanford Univ. Med. Ctr./ Lucille Packard" is among the contracts listed.  [Inciardi Decl. ¶ 27 & Exh. D p. 3.]

> ### (4)    As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No Obligation To Arbitrate The Simien, Satuito or Andrade Grievances

As the above evidence demonstrates, SEIU's plan to dissolve Local 715 was carried out and, as of March 1, 2007, Local 715 was no more.  Given this, two conclusions necessarily follow.  First, the Hospitals are not obligated to arbitrate the Simien, Satuito, and Andrade Grievances because the only party with standing to compel arbitration no longer exists.  Second, this Court lacks jurisdiction over this case because the party purportedly maintaining the action has been shown to be fictitious.  Therefore, the Court should dismiss each of the cases.

> ### (5)    The Maintenance Of Local 715 As A Sham Organization Does Not Change The Result

Various individuals have attempted to maintain the fiction that Local 715 continues to exist, chiefly by baldly representing that it continues to exist, issuing correspondence in its name, and appointing a "trustee" for it.  However, these efforts are a transparent attempt to hide the reality of what has occurred.  It should be no difficult task for an ongoing organization to demonstrate something as basic as its simple existence.  Yet, at every stage where "Local 715" has been called upon to establish that it exists, it has declined or openly refused to do so. [Arnold Decl. ¶ 32; 34; 40-42; 49-53; 64-65 & Exh. Z-AA; FF-GG; NN-RR; DDD-EEE.] "Local 715" in fact refused to provide any information whatsoever in response to the Hospitals' information requests, although it is required to do so under the NLRA.[16]  [Arnold Decl. ¶ 71 & Exh. LLL.]  Similarly, "Local 715" refused to appropriately respond to discovery requests in the pending actions.  Weinberg Firm attorneys also have refused to state that they are not actually

---

[16] In fact, Region 32 of the NLRB has come to the conclusion that Local 715's refusal to produce requested information on its status and legal representation was unlawful and issued a complaint on that basis.  [Arnold Decl. ¶ 71 & Exh. LLL.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

1  retained by UHW.  Indeed, when "Local 715" filed a charge with the NLRB alleging that the

2  Hospitals unlawfully refused to deal with its "Trustee," Region 32 dismissed the charge after

3  "Local 715" failed to provide any evidence that it actually existed.  [Arnold Decl. ¶ 73 & Exh.

4  MMM.]

5      Thus, it is clear that "Local 715" exists, if at all, only on paper, and is, in fact, a sham

6  designed to hide the fact that the former organization has been dissolved.  Where a labor

7  organization has actually ceased to exist, courts will reject attempts to compel arbitration by

8  persons claiming to be that organization.  *Moruzzi, supra*, 443 F.Supp. at 336-337.  Simply

9  asserting the organization's existence is insufficient.

10  **C.    Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not**

11  **Required To Participate In Grievance And/Or Arbitration Proceedings With**

12  **Representatives Of UHW**

13      Even assuming for the sake of argument only that Local 715 continues to exist (which the

14  Hospitals by no means concede), the Hospitals are still not obligated to arbitrate the Simien,

15  Satuito and Andrade Grievances because the actual party seeking to arbitrate with the Hospitals

16  is not Local 715, but UHW, and UHW has no standing to compel the Hospitals to arbitrate.

17      Local 715 and the Weinberg attorneys (who have attempted to appear on Local 715's

18  behalf with respect to these grievances and other grievances filed since March, 2007) have been

19  unwilling to state that such appearances were, or would be, made on behalf of Local 715 directly,

20  although it would be in their interest to do so were that the case.[17]  [Arnold Decl. ¶ 64-66 & Exh.

21  DDD-FFF.]  This behavior is tantamount to an admission that such appearances were not, and

22  would not be, directly on behalf of Local 715.  Instead, the evidence reflects that the Weinberg

23  attorneys who are seeking to arbitrate with the Hospitals are retained by UHW and are appearing

24  _____

25  [17] In a letter dated December 14, 2007, Mr. Smith stated that he authorized the Weinberg Firm to
   "represent the Union all (sic) aspects of the arbitration process."  [Quintel Decl. ¶ 56 & Exh.

26  MM.]  This letter, like the representations made by the Weinberg Firm itself on this issue, was
   carefully crafted in such a way as to fail to address the essential question – was the Weinberg

27  Firm's representation direct or pursuant to the Servicing Agreement, which Mr. Smith asserted
   remained in full force and effect.  Mr. Smith's representation was completely consistent with

28  continued representation through the invalid Servicing Agreement.

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

1    for Local 715 pursuant to the invalid Servicing Agreement, which the "trustee" has attempted to

2    resurrect.

3        Local 715 may argue that UHW attorneys are entitled to represent Local 715 pursuant to

4    the rejected Servicing Agreement. However, while it is established that a union may assign

5    agents to appear on its behalf, what is actually transpiring is an invalid attempt to transfer Local

6    715's bargaining duties wholesale to UHW. The Hospitals are not obliged to acquiesce in this

7    attempt, and are actually prohibited from doing so.

8        The Servicing Agreement authorizes UHW to provide "services" to Local 715 consisting

9    of representation in grievance and arbitration proceedings, representation in labor management

10    meetings, and assistance to members appearing before the NLRB.[18] [Arnold Decl. Exh. CC.]

11    Yet, as discussed above, after the Servicing Agreement went into effect, UHW simply replaced

12    Local 715 with respect to all aspects of the bargaining relationship. Additionally, as discussed

13    previously, the plan adopted by the SEIU expressly called for Local 715's representative duties

14    to be transferred to UHW.

15        It has been recognized that, under the National Labor Relations Act, one union may use

16    agents or experts from another union to act on its behalf in formal labor negotiations. *Goad*

17    *Company*, 333 NLRB 677, 679 (2001). However, a union may not use the purported

18    appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

19    such circumstances, the employer is under no obligation to deal with the purported agents.

20    *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

21    certified union "did not simply enlist the aid of an agent . . . it transferred its representational

22    duties and responsibilities.") See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

23    (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

24    designed to accomplish a *de facto* change of the bargaining agent.).

25

26    _____
    [18] The Servicing Agreement also calls upon Local 715 resume representing the Bargaining Unit
27    in the event that the Hospitals reject the Servicing Agreement, which Local 715 has not done. It
    also calls for Local 715 and UHW to take steps to enforce the Servicing Agreement in the event
28    of its rejection by the Hospitals, which they have not done. [Arnold Decl. Exh. CC.]

SFCA_1424228.4

1  The same conclusion applies here.  Local 715 and UHW have used the Servicing

2  Agreement as a "device, subterfuge, or stratagem" to, in effect, transfer representative

3  status to UHW.  Rather than serving as a mere agent, as called for in the Servicing

4  Agreement, UHW has sought to completely supplant Local 715 with respect to every

5  aspect of collective bargaining, leaving Local 715 as the representative in name only.

6  Given this, the Hospitals are not obligated to (and, in fact, must not) deal with employees

7  and representatives of UHW, including Weinberg Firm attorneys, acting pursuant to the

8  invalid Servicing Agreement.

9       **D.    If The Court Decides That These Cases Present A Representational Issue On**

10           **Which It Should Not Rule, It Should Issue A Stay**

11  Although this Court is vested with authority to hear suits for breach of a collective

12  bargaining agreement under Section 301, the NLRB has primary jurisdiction over questions of

13  representation under the NLRA.  *Local No 3-193 International Wood-Workers Of America v.*

14  *Ketchikan Pulp Company*, 611 F.2d 1295, 1301 (9th Cir. 1980).  This case does not fall within

15  the Board's primary jurisdiction because the Court is not asked to determine the representative

16  status of Local 715.  Rather, the Court is asked to decide that the Hospitals did not breach the

17  CBA because Local 715 no longer exists, or because the demand for arbitration is being made by

18  UHW.  It is established that a federal court may decide contractual issues under Section 301,

19  even if such issues closely parallel representational issues.  *Hotel Employees, Restaurant*

20  *Employees Union, Local 2 v. Marriott Corporation*, 961 F.2d 1464, 1468 (9th Cir. 1992);

21  *Moruzzi, supra*, 443 F.Supp. at 337 (holding that because the union had ceased to exist, those

22  acting in its name had no standing to compel arbitration).[19]

23  Nevertheless, the Hospitals recognize that these issues are closely related to the issue of

24  the representative status of Local 715 because, if Local 715 has ceased to exist, then it has

25

26  _____

27  [19]  Indeed, because Section 301 requires that the suit in question be by or against a "labor
   organization," the Court is necessarily to make a finding on the status of the purported labor
   organization, including whether the purported labor organization actually exists.  29 U.S.C. §

28  185.

SFCA_1424228.4

1  necessarily lost its representative status.  In the event that the Court determines that it should not

2  make a determination regarding the status of Local 715 because it involves a representational

3  question within the primary jurisdiction of the NLRB, the Court should issue an order staying

4  any arbitration proceedings pending resolution of such issue before the NLRB.  Such resolution

5  must be on a charge filed by Local 715 alleging a refusal to recognize or bargain by the

6  Hospitals, as there is no charge that the Hospitals may initiate on this issue.  Local 715, however,

7  has steadfastly refused to file such a charge.

8  **IV.   <u>CONCLUSION</u>**

9     For the foregoing reasons, the Hospitals respectfully submit that the Court should find

10 that, because Local 715 no longer exists, the Hospitals are not required to arbitrate the Simien,

11 Satuito, and Andrade Grievances, or, in the alternative, that they are not required to arbitrate with

12 any person not directly employed or retained by Local 715.  In such circumstances, the Court

13 should grant summary judgment and/or adjudication in the Hospitals favor and dismiss the

14 Simien, Satuito and Andrade actions.  Finally, in the event that the Court decides that it cannot

15 resolve the above issues because there exists a representation issue that must be decided by the

16 NLRB, the Hospitals request that the Court issue an order staying the Simien, Satuito and

17 Andrade actions until the Board resolves such issue.

18

19 Dated:  July 18, 2008                    FOLEY & LARDNER LLP
                                          LAURENCE R. ARNOLD
20                                         EILEEN R. RIDLEY
                                          SCOTT P. INCIARDI
21

22

23                                         By: /s/ _____
                                               EILEEN R. RIDLEY
24                                             Attorneys for Respondents STANFORD
                                              HOSPITAL & CLINICS and LUCILE
25                                             PACKARD CHILDREN'S HOSPITAL

26

27

28

24

SFCA_1424228.4