1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

11 | SERVICE EMPLOYEES

12 INTERNATIONAL UNION, LOCAL 715

Case No: 5:08-CV-00216-JF

13          Petitioner,

[PROPOSED] ORDER GRANTING
STANFORD HOSPITAL AND
CLINICS' AND LUCILE PACKARD
CHILDREN'S HOSPITAL'S MOTION
FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, SUMMARY
ADJUDICATION OF CLAIMS OR
DEFENSES

14     vs.

15 STANFORD HOSPITAL & CLINICS and
LUCILE PACKARD CHILDREN'S

16 HOSPITAL

17          Respondents.

[FED. RULE OF CIV. P. 56]

18

Date:       August 29, 2008
Time:       9:00 A.M.
Dept:       Ctrm. 3, 5th Floor

19

20

Judge:      Hon. Jeremy Fogel

21 | SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 715

Case No: 5:08-CV-01726-JF

22

23          Petitioner,

24     vs.

25 STANFORD HOSPITAL & CLINICS and
LUCILE PACKARD CHILDREN'S

26 HOSPITAL

Judge:      Hon. Jeremy Fogel

27          Respondents.

28

SFCA_1425613.2

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-01727-JF |
| Petitioner, | |
| vs. | |
| STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| Respondents. | Judge:        Hon. Jeremy Fogel |

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

The motion of Respondents Stanford Hospital And Clinics and Lucile Packard Children's Hospital (the "Hospitals") for summary judgment or, in the alternative adjudication of claims or defenses in Case Nos. 5:08-CV-00216 JF (Simien Grievance), 5:08-CV-01726 JF (Satuito Grievance), and 5:08-CV-01727 JF (Andrade Grievance) (collectively, the "Cases") came on regularly for hearing on August 29, 2008, with Eileen R. Ridley of Foley & Lardner, LLP appearing as counsel for the Hospitals and Bruce Harland of Weinberg Roger & Rosenfeld appearing for Petitioner, Service Employees International Union, Local 715 ("Local 715"). After full consideration of the papers in support and in opposition of said motion, the evidence submitted by the parties, the oral argument of counsel and the papers and records in the Cases, and good cause appearing, the Court HEREBY FINDS that there is no triable issue of any material fact and that the Hospitals are entitled to judgment as a matter of law under Rule 56 of the Federal Rules Of Civil Procedure for the reasons stated below.

## I.    **LOCAL 715 HAS CEASED TO EXIST**

The Hospitals are not required to arbitrate the grievances at issue in the Cases because Local 715 has ceased to exist.

The Court finds that the following facts are material and undisputed:

- In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order (the "Certification") certifying Local 715 as the exclusive collective bargaining representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the Certification. [Declaration of Laurence R. Arnold In Support of Motions ("Arnold Decl.) Exh. A.]

- Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a series of collective bargaining agreements. The current collective bargaining agreement (the "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008. [Arnold Decl. Exh. B.]

- Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

1

Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees.  [Arnold Decl. Exh. B.]

- Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged.  However, only Local 715 may appeal a grievance to arbitration.  [Arnold Decl. Exh. B.]

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW").  [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In Support of Motions ("Inciardi Decl.") Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

-  The  Servicing Agreement was to be effective as of March 1, 2006.  [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of

2

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

grievances and unfair labor practice charges.  [Declaration of Laurie J. Quintel In Support Of Motions ("Quintel Decl.") ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

- Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."  [Arnold Decl. ¶ 26 & Exh. S.]

3

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them. [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks. [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW. [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW. [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report"). The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan"). The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements." [Inciardi Decl. Exh. T p. 16.] The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed. With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715. [Inciardi Decl. Exh. T p. 40.] The Joint

4

SFCA_1425613.2

1    Report also recommended that, "the affiliation of private healthcare units represented by

2    Locals 727, 715, and 2028 should be changed to UHW as soon as feasible." [Inciardi

3    Decl. Exh. T p. 65.]

4
5    •    On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a

6         memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had

7         decided to adopt the recommendations outlined in the Joint Report. The memorandum

8         confirmed that "Private Sector Hospital units currently represented by Locals 535, 707,

9         715, 2028, and 4988 will merge into UHW." [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

10   •    Hospitals received copies of the Servicing Agreement in mid August and reviewed it.

11        [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] The Hospitals

12        concluded, based upon the evidence that Local 715 had abdicated its representative duties

13        and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

14
15   •    Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or

16        around August 29, 2006, and was further informed that the Hospitals would not deal with

17        employees of UHW acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 38 &

18        Exh. EE.]

19   •    In September, 2006, Bargaining Unit employees were asked to ratify the reorganization

20        plan adopted by SEIU by means of a state-wide vote. The balloting material distributed

21        to Bargaining Unit employees expressly stated that "Hospital workers at . . .

22        Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United

23        Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

24
25   •    On January 2, 2007, International President Stern issued an "Order Of Reorganization" to

26        various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern

27        ordered that all workers represented by Local 715, with certain exceptions, be

28        "reorganized into SEIU Local 521." President Stern further ordered that "all . . .

5

SFCA_1425613.2

Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U.] Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.] Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed. He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521. This web site will be taken down on Feb. 28. On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org. Local 521's website contained a prominent statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.] Another page referenced benefits available to "former SEIU Local 715 members." [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement:

6

SFCA_1425613.2

"Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

- The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]

- In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]

- On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and

7

SFCA_1425613.2

after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date.  [Quintel Decl. ¶ 37.]

• On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

• Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

• Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

• To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

• Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

8

SFCA_1425613.2

1    hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

2    Decl. ¶ 46 & 49 & Exh. LL.]

3

4    •    The Hospitals were aware that the Weinberg Firm has historically acted as counsel to

5    UHW and it had previously sent correspondence to the Hospitals representing UHW

6    pursuant to the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals

7    became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was

8    actually retained by UHW and acting under authority of the rejected Servicing

9    Agreement.  However, when the Hospitals requested information from "Local 715" on

10   this issue "Local 715" and its purported attorneys either failed to respond or openly

11   refused to respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded

12   that the Weinberg Firm was, in fact, representing UHW, and that its appearances on

13   "Local 715's" behalf were made under authority of the rejected Servicing Agreement.

14   Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

15   attorneys absent assurances that the appearance was made directly on behalf of "Local

16   715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

17   Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

18   requested assurance.

19        The undisputed facts set forth above demonstrate that on or around March 1, 2007, Local

20   715 was dissolved and that it no longer exists.  It is well-established that, where the NLRB

21   certifies a union as the exclusive bargaining representative of an employer's workers pursuant to

22   the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from

23   bargaining with any other union.  *Medo Photo Supply Corporation v. National Labor Relations

24   Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd.*, 341 NLRB 953, 955

25   (2004).  Where the certified union has ceased to exist, the employer's bargaining obligation is at

26   an end.  *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn

27   Associates v. National Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

28

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2

Likewise, where an employer and the certified union negotiate a collective bargaining agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the employer no longer has any obligation to arbitrate because only the union has standing to compel arbitration. *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the agreement"). Where the certified union has ceased to exist, its former officials or representatives do not have standing to compel arbitration under its name. *Moruzzi, supra*, 443 F.Supp. at 337.

Because Local 715 has ceased to exist, it lacks standing to compel arbitration with respect to the three (3) grievances at issue in the Cases, and the Hospitals are not obligated to arbitrate with "Local 715" it over any of those grievances.

Therefore Judgment shall be entered against Local 715 and in favor of the Hospitals in the Cases and each of the Cases shall be DISMISSED WITH PREJUDICE.

## II. THE HOSPITALS ARE NOT OBLIGATED TO ARBITRATE WITH UHW OR ITS REPRESENTATIVES

Whether or not Local 715 continues to exist, the Hospitals are not obligated to arbitrate with UHW or UHW's representatives acting pursuant to the Servicing Agreement because the Servicing Agreement is invalid.

The Court finds that the following facts are material and undisputed:

- In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order (the "Certification") certifying Local 715 as the exclusive collective bargaining representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the Certification. [Arnold Decl. Exh. A.]

- Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a series of collective bargaining agreements. The current collective bargaining agreement (the "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008. [Arnold Decl. Exh. B.]

10

SFCA_1425613.2

- •     Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees. [Arnold Decl. Exh. B.]

- •     Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged. However, only Local 715 may appeal a grievance to arbitration. [Arnold Decl. Exh. B.]

- •     Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW"). [Arnold Decl. ¶ 36 & Exh. CC; Inciardi Decl. Exh. EE.]

- •     The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility." [Arnold Decl. Exh. CC.]

- •     The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

- •     The Servicing Agreement was to be effective as of March 1, 2006. [Arnold Decl. Exh. CC.]

- •     On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of

11

SFCA_1425613.2

grievances and unfair labor practice charges.  [Quintel Decl. ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

- Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."  [Arnold Decl. ¶ 26 & Exh. S.]

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the

12

Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by

13

SFCA_1425613.2

Locals 727, 715, and 2028 should be changed to UHW as soon as feasible." [Inciardi Decl. Exh. T p. 65.]

- On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report. The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW." [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

- In mid-August, the Hospitals received copies of the Servicing Agreement in mid August and reviewed it. [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote. The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521." President Stern further ordered that "all . . .

14

SFCA_1425613.2

Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U.]  Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.]  Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed.  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at *http://www.SEIU715.org*, that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web site *www.seiu521.org* will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org.  Local 521's website contained a prominent statement that  five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members." [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement:

15

SFCA_1425613.2

"Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

- The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]

- In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]

- On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and

16

SFCA_1425613.2

after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date.  [Quintel Decl. ¶ 37.]

- On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

- Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

- Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

- To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

- Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

17

SFCA_1425613.2

1    hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

2    Decl. ¶ 46 & 49 & Exh. LL.]

3

4    •    Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW

5         and it had previously sent correspondence to the Hospitals representing UHW pursuant to

6         the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became

7         concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually

8         retained by UHW and acting under authority of the rejected Servicing Agreement.

9         However, when the Hospitals requested information from "Local 715" on this issue

10        "Local 715" and its purported attorneys either failed to respond or openly refused to

11        respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded that the

12        Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local

13        715's" behalf were made under authority of the rejected Servicing Agreement.

14        Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

15        attorneys absent assurances that the appearance was made directly on behalf of "Local

16        715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

17        Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

18        requested assurance.

19        It has been recognized that, under the National Labor Relations Act, one union may use

20   agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

21   *Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

22   appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

23   such circumstances, the employer is under no obligation to deal with the purported agents.

24   *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

25   certified union "did not simply enlist the aid of an agent . . . it transferred its representational

26   duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

27   (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

28

18

SFCA_1425613.2

1    designed to accomplish a *de facto* change of the bargaining agent.).

2         The undisputed facts set forth above demonstrate that, notwithstanding the content of the

3    Servicing Agreement, in practice, "Local 715" and UHW have used the Servicing Agreement as

4    a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW.  Rather

5    than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to

6    completely supplant Local 715 with respect to every aspect of collective bargaining, leaving

7    Local 715 as the representative in name only.  Given this, the Hospitals are not obligated to

8    arbitrate or otherwise deal with employees and representatives of UHW, including Weinberg

9    Firm attorneys, acting pursuant to the invalid Servicing Agreement.  Thus, as a matter of law,

10   judgment shall be entered in the favor of the Hospitals and each of the Cases shall be dismissed

11   with prejudice.

12

13        **IT IS ORDERED**, for the foregoing reasons, that the Hospitals' motion for summary

14   judgment or, in the alternative, summary adjudication of claims or defenses in Case Nos. 5:08-

15   CV-00216 JF, 5:08-CV-01726 JF, and 5:08-CV-01727 JF is **GRANTED** and that judgment will

16   be entered against Local 715 and in favor of the Hospitals in each of the Cases.  Further, **IT IS**

17   **ORDERED** that each of the CASES shall be DISMISSED with prejudice.

18

19   Dated:

20

21                                    By:  _____

22                                         HON. JEREMY FOGEL
                                          JUDGE OF THE UNITED STATES
23                                        DISTRICT COURT FOR THE NORTHERN
                                          DISTRICT OF CALIFORNIA

24

25

26

27

28

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2